<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHANIE F., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Civil Action No. 24-7247 (MAS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Stephanie F.'s ("Plaintiff")[1] appeal of the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying her request for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Federal Rule of Civil Procedure 78(b). For the reasons outlined below, the Court affirms the Commissioner's final decision.

**I.   BACKGROUND**

In this appeal, the Court must determine whether substantial evidence supports the Administrative Law Judge's ("ALJ") finding that Plaintiff is not disabled. The Court begins with the procedural posture and the ALJ's decision.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

### A. Procedural Posture

Plaintiff filed an application for DIB on September 22, 2021, alleging a disability onset date of February 12, 2019, and last insured date of March 31, 2020. (AR 26, 29, ECF No. 7-2.[2]) The Social Security Administration (the "Administration") denied the request both initially and on reconsideration. (*Id.* at 118-23, 125-30.) Thereafter, Plaintiff requested a hearing (*id.* at 143-44), and the ALJ held that hearing on April 27, 2023 (*id.* at 193). The ALJ issued a written opinion, where she determined that Plaintiff was not disabled and could perform work at a medium exertional level. (*Id.* at 23-49.) Plaintiff appealed that decision, and the Administration's Appeals Council denied Plaintiff's request for review. (*Id.* at 1-4.) This appeal followed. (ECF No. 1.) Plaintiff filed her moving brief on September 19, 2024. (ECF No. 8.) The Commissioner opposed (ECF No. 10), and Plaintiff replied (ECF No. 11).

### B. The ALJ's Decision

The ALJ, in a written decision, concluded that Plaintiff was not disabled at any time between February 12, 2019, and March 31, 2020. (AR 27.) The ALJ set forth the five-step process for determining whether an individual is disabled. (*Id.* at 27-29 (citing 20 C.F.R. § 404.1520(a)).) At step one, the ALJ found that Plaintiff did not "engage in substantial gainful activity" during the period from her alleged onset date through the date last insured. (*Id.* at 29 (citing 20 C.F.R. § 404.1571).)

At step two, the ALJ determined that Plaintiff suffered from several severe impairments during the relevant time period, specifically: (1) lumbar degenerative disc disease; (2) headaches; (3) vertigo disorder; (4) tinnitus; (5) posttraumatic stress disorder; (6) anxiety disorder; and

---

[2] The Administrative Record ("AR") is found at ECF No. 7. The Court will reference the relevant pages of the AR.

2

(7) panic disorder. (*Id.*) The ALJ found that Plaintiff's other alleged impairments were non-severe. (*Id.* at 29-33 (citing 20 C.F.R. § 404.1520(c)).)

At step three, the ALJ determined that Plaintiff did not have "an impairment or combination of impairments" that qualified under one of the Administration's listed impairments in Appendix 1 of the regulations. (*Id.* at 33 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) The ALJ then found that Plaintiff possessed the residual functional capacity ("RFC"):

> to perform medium work as defined in 20 C[.]F[.]R[. §] 404.1567(c) except: [She can o]ccasionally climb ramps or stairs. Never climb ladders, ropes or scaffolds. Occasionally stoop, balance, crouch, kneel or crawl. Avoid concentrated exposure to noise. No exposure to workplace hazards such as moving machinery or unprotected heights. Work limited to simple, routine tasks.

(*Id.* at 38.)

In determining that Plaintiff had the RFC "to perform medium work" subject to certain limitations, the ALJ examined: (1) Plaintiff's medical records from AdvoCare Orthopedics, Barnegat Internal Medicine, Southern Ocean Medical Center Health System, and Southern Otolaryngology from 2017 to 2020; (2) Plaintiff's subjective complaints and testimony; and (3) the state agency consultants' shared opinions. (*Id.* at 38-45.) Although the state agency medical consultants collectively opined that Plaintiff was limited to a light exertional level, reduced exposure to extreme cold and humidity, and crawling, the ALJ determined these opinions were "not persuasive" because the record failed to demonstrate the severity of the limitations as the consultants had opined. (*Id.* at 45.)

At step four, the ALJ found that Plaintiff had "no past relevant work." (*Id.* at 47 (citing 20 C.F.R. § 404.1565).) At step five, the ALJ concluded that "there were jobs that existed in significant numbers in the national economy" that Plaintiff could have performed. (*Id.* (citing 20 C.F.R. §§ 404.1569, 404.1569(a)).) In doing so, the ALJ relied upon the testimony of the vocational expert, who testified that an individual of Plaintiff's age, education, work experience, and RFC

3

would have been able to perform representative occupations such as: (1) "Hand Packager"; (2) "Tray Worker"; or (3) "Lab Equipment Cleaner." (*Id.* at 48.) As such, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from the alleged onset date through the date last insured. (*Id.*)

This appeal turns on the ALJ's assessment of the severity of Plaintiff's spinal stenosis and determination of Plaintiff's RFC. (*See generally* Pl.'s Moving Br., ECF No. 8.) Specifically, Plaintiff argues that "the ALJ totally failed to consider [P]laintiff's severe spinal stenosis at Step 2 of the sequential analysis," and "[t]he ALJ crafted a[n] [RFC] without medical evidence to support her determination." (*Id.* at 5, 7.) The Court must therefore resolve whether the ALJ's decision is supported by substantial evidence and adequately explained.

## II.    LEGAL STANDARD

### A.    Standard of Review

On appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)).

Even amid this deferential standard, the Third Circuit has explained that the Court's review must be a qualitative exercise requiring a thorough examination of the ALJ's decision and the record:

> [The substantial evidence standard] is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion. The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (citation omitted). It is, thus, necessary for ALJs to analyze all probative evidence and set out the reasons for their decisions. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). If the ALJ has not analyzed all probative evidence and has not sufficiently explained the weight given to the evidence, the decision is not supported by substantial evidence. *See Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir.

5

1979) (citation and internal quotation marks omitted) ("[T]o say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."). The ALJ must state both the evidence considered as well as the evidence rejected. *See Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." (internal citation omitted)).

### B. Establishing Eligibility for DIB

To be eligible for DIB under the Act, a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Administration regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). For the first step, a claimant must establish that she has not engaged in any substantial gainful activity since the onset of her alleged disabilities. *Id.* § 404.1520(a)(4)(i). For the second step, a claimant must establish that she suffers

from a "severe impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). The claimant bears the burden of establishing the first two requirements, and failure to satisfy either one results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The third step requires that a claimant provide evidence that her impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant demonstrates that she suffers from a listed impairment or that her severe impairment is equal to a listed impairment, she is presumed to be disabled and entitled to disability insurance benefits. *Id.* If she cannot so demonstrate, the eligibility analysis proceeds to step four. The fourth step of the analysis requires the ALJ to determine whether a claimant's RFC permits her to resume previous employment. *Id.* § 404.1520(e). If a claimant's RFC permits previous employment, the claimant is not "disabled" and thus not entitled to disability insurance benefits. *Id.* § 404.1520(f). Importantly, the burden of persuasion rests with the claimant in the first four steps. *See Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).

At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work consistent with her medical impairments, age, education, past work experience, and RFC. 20 C.F.R. § 404.1520(g). If the Commissioner cannot satisfy this burden, the claimant will receive disability insurance benefits. *Id.*

### III. DISCUSSION

Plaintiff alleges that the ALJ erred in her decision finding Plaintiff could perform medium work because the ALJ failed to: (1) consider Plaintiff's spinal stenosis as a severe impairment at Step 2; and (2) adequately support the RFC determination with medical evidence. (*See generally* Pl.'s Moving Br.) The Court considers each argument in turn and finds them unpersuasive.

### A. Plaintiff's Alleged Severe Impairment of Spinal Stenosis

Plaintiff argues that, at step two of the sequential analysis, the ALJ failed to acknowledge that she suffers from the severe impairment of spinal stenosis. (*Id.* at 5.) The Commissioner argues that the ALJ reasonably identified Plaintiff's severe impairments at step two of the sequential analysis. (Def.'s Opp'n Br. 9.) The Commissioner also argues that the ALJ appropriately found that Plaintiff's impairment did not meet or medically equal the listings at step three of the sequential analysis. (*Id.* at 12.) The Court agrees with the Commissioner.

Here, although the ALJ may not have specifically named each of Plaintiff's medical conditions at step two of the sequential analysis, the ALJ's overall decision reflects that the ALJ considered the entirety of Plaintiff's medical conditions in reaching her determination. For example, while the ALJ did not identify spinal stenosis as a severe impairment at step two, the ALJ noted Plaintiff's spinal issues, including that abdominal x-rays from April 2017 revealed degenerative changes of the lumbar spine, classified as mild, and that the x-rays did not reveal fracture, dislocation, or subluxation. (AR 40.) The ALJ also noted that AdvoCare Orthopedics records from 2017 "document only one-time exam findings of subjective lumbar spinal tenderness with subjectively painful ranges of lumbar spinal motion." (*Id.* at 39 (citing AR 395).)

Even if the Court were to find that the ALJ erred in failing to find spinal stenosis as a severe impairment at step two, the Court would find this to be a harmless error. "It is well established that any omission of an impairment at [s]tep [t]wo is harmless error, provided that the ALJ determines that the claimant has at least one severe impairment and continues onto the subsequent steps of the sequential analysis." *Vanessa T-H. v. Comm'r of Soc. Sec.*, No. 23-2293, 2024 WL 1635685, at *4 (D.N.J. Apr. 16, 2024) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (2007)). Indeed, any such omission is harmless "when the ALJ does not deny benefits at that step and

properly considers the condition in the remaining analysis." *See Edinger v. Comm'r*, 432 F. Supp. 3d 516, 531 (E.D. Pa. 2020) (quoting *Rutherford*, 399 F.3d at 552-53).

Here, the ALJ found that Plaintiff had severe impairments during the relevant period in step two and continued to step three, rendering any deficiency at step two harmless. (*See* AR 33.) In step three of the sequential analysis, the ALJ considered both Listing 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root(s)) and Listing 1.16 (Lumbar stenosis resulting in compromise of the cauda equina), finding that Plaintiff did not meet or equal either one. (*Id.*) Whereas here, the ALJ has already considered the functional limitations of Plaintiff's alleged spinal stenosis, the outcome would not change upon a diagnosis of severe spinal stenosis in step two. *Burnside v. Colvin*, 197 F. Supp. 3d 705, 719 (M.D. Pa. 2015) (explaining that what is relevant is the functional limitations of an impairment, rather than its "mere diagnosis"). Plaintiff's contention that the ALJ erred in finding that Plaintiff's spinal stenosis was non-severe is therefore an insufficient basis for reversal or remand.

**B.     ALJ's RFC Determination**

Plaintiff alleges that the ALJ additionally erred because: (1) Plaintiff's RFC determination—that she could perform medium exertional level work—was not supported by substantial evidence; and (2) the ALJ did not adequately consider the opinions of three State medical agency consultants. (Pl.'s Moving Br. 7-8.)

The ALJ is responsible for making the ultimate determination of an individual's RFC. 20 C.F.R. § 404.1546(c); *see Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."). "In making a[n] [RFC] determination, the ALJ must consider all evidence before [her]," and, although the ALJ may weigh the credibility of the

evidence, she must "give some indication of the evidence which [s]he rejects and [her] reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; see *Cotter*, 642 F.2d at 706-07 (holding same). The indication of the ALJ's reasoning, however, may be "implicit" in the decision. *Diciano v. Comm'r of Soc. Sec.*, No. 18-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) (finding that, although the RFC did not specifically mention "the functions of sitting, standing, walking, lifting, carrying, or pushing . . . that does not mean the ALJ did not 'consider' those functions.").

### 1. *Substantial Evidence*

Plaintiff first argues that the ALJ's RFC finding was not supported by substantial evidence. (Pl.'s Moving Br. 7-8.) The Court disagrees.

Here, the Court finds that the ALJ fully accounted for Plaintiff's physical functions in rendering Plaintiff's RFC determination. That is, the ALJ, in assessing Plaintiff's RFC, considered the objective medical evidence, medical opinions, as well as Plaintiff's subjective complaints. (*See generally* AR.) After carefully considering the evidence, the ALJ initially found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (*Id.* at 39.) The ALJ noted, however, that Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence in the record. (*Id.*) The ALJ considered Plaintiff's severe physical impairments and compared Plaintiff's alleged limitations with the conservative and limited course of treatment during the relevant period. (*Id.*) In addition to one emergency room presentation and an appendectomy, the ALJ considered records of one-time examination findings from: (1) AdvoCare Orthopedics, documenting subjective lumbar spinal tenderness and lumbar spinal motion; (2) Barnegat Internal Medicine, documenting subjective neck stiffness; and (3) Southern Ocean Medical Center Health System, documenting diminished upper and lower extremity reflexes. (*Id.* at 39-40.)

The ALJ then evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit her work-related activities. (*Id.*) The ALJ concluded that the record failed to reveal that Plaintiff was as limited as she and the medical agency consultants claimed her to be. (*Id.* at 45.) In concluding so, the ALJ considered an absence of medical findings such as a hearing deficit, motor deficit, or noted pain behaviors upon examination. (*Id.* at 40.) *See Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 95 (3d Cir. 2004) (explaining that an ALJ is "entitled to rely not only on what the record says, but also on what it does not say.") (citation omitted). The ALJ also considered Plaintiff's physical examination findings, course of treatment, and other relevant evidence to support the finding that Plaintiff's symptoms do not prevent her from performing the physical demands of work with the assessed RFC. (AR 39-40.) Additionally, the ALJ supported the RFC finding by evaluating Plaintiff's testimony regarding daily living activities. (*Id.* at 44.) The ALJ's evaluation of Plaintiff's ability to cook, do chores, shop via mail and computer, watch television, read, play board games, do homework with others, and other items of evidence in the record, show that Plaintiff's functions were implicitly and explicitly considered in the RFC determination. (*Id.*)

Here, the Court finds that the ALJ's RFC finding is supported by substantial evidence. As such, the Court finds no reason to disturb the ALJ's RFC determination on this basis.

### 2. *Medical Opinions*

Plaintiff argues next that the ALJ erred because the ALJ's RFC determination failed to properly consider the opinions of three State medical agency consultants. (Pl.'s Moving Br. 7-8.) The Court, again, disagrees.

The ALJ must consider all relevant evidence when determining an individual's RFC. *Fargnoli*, 247 F.3d at 41 (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546). The Court

"need[s] from the ALJ not only an expression of the evidence [s]he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 706. "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). This standard "does not require the ALJ to undertake any additional inquiry, but merely to explain the basis for the decision to reject evidence which s/he has already made." *Id.*; *see Demarco v. Kijakazi*, No. 21-16153, 2022 WL 3227263, at *11 (D.N.J. Aug. 10, 2022) (declining to remand where the ALJ provided reasons for rejecting contrary medical opinions).

For claims filed after March 27, 2017, as here,[3] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527, *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The supportability and consistency factors are "the most important factors" the ALJ considers when determining the persuasiveness of medical evidence, and the ALJ's analysis of

---

[3] As previously noted, Plaintiff's claim was filed on September 22, 2021. (AR 26.)

those factors must be explained when examining a medical opinion. *See Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024) (citation omitted) ("[ALJs] [are required] to explain only two of these factors: whether medical opinions were[:] (1) based on 'objective medical evidence and supporting explanations'[;] and (2) consistent with other medical opinions."). "Supportability" is the extent to which the medical source presented "relevant [] objective medical evidence and . . . explanation[]," and "consistency" is the extent to which the medical opinion is consistent with other evidence. 20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ, however, "need not reiterate the magic words 'support' and 'consistent' for each doctor," and may "weave [discussion of] supportability and consistency throughout her analysis of which doctors were [more] persuasive." *Zaborowski*, 115 F.4th at 639.

Here, the Court finds that the ALJ's discussion of the medical opinion evidence in her decision includes a proper and adequate indication of her evaluation of the supportability and consistency factors. The ALJ, in her decision, evaluated the relevant opinions of Drs. Encarnacion, Sobelman, and Kelly. (AR 45.) The ALJ, in finding their opinions to be unpersuasive, made the following determinations:

> [W]hile the claimant generally having exertional, postural, noise exposure and hazard exposure limitations is generally consistent with the record, the record fails to reveal that the claimant was as limited as Drs. Encarnacion, Sobelman and Kelly opined as to exertional level, as Dr. Encarnacion opined as to exposure to extreme cold and humidity, or as Drs. Sobelman and Kelly opined as to crawling. For example, despite symptoms, potential medication side effects, and the above-detailed treatment history and abnormal objective findings, the record fails to reveal, through the date last insured, a repeated pattern of emergency room presentations or hospitalizations or exam findings of ambulatory assistive device use, atrophy, edema, swelling, joint instability/laxity, pronator drift, dysmetria, dysdiadochokinesia, titubation, contracture, cogwheeling, involuntary moments/tremors, a fatigued, lethargic, tired, sleepy, etc. appearance, or any noted pain behaviors upon exam.

(*Id.*) As such, the Court rejects Plaintiff's contention that the ALJ failed to adequately consider the medical opinion evidence. The Court, therefore, finds no error in the ALJ's evaluations in this regard. *Brittany V. v. Kijakazi*, No. 20-14505, 2023 WL 2263749, at *10 (D.N.J. Feb. 28, 2023) (finding that the ALJ properly evaluated medical opinions regarding the plaintiff's exertional limitations where the ALJ considered an absence of evidence supporting the same in medical examination); *Crossley v. Kijakazi*, No. 20-2298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated opinions regarding exertional limitations where the ALJ considered physical examinations routinely noting the claimant to have a normal range of motion and no issues such as tenderness); *Aponte v. Kijakazi*, No. 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25, 2021) (affirming the ALJ's finding that a treating opinion was not persuasive because it was inconsistent with mild findings on physical examinations and mild radiographic findings).

To the extent that Plaintiff contends that the ALJ erred in formulating the RFC because it conflicts with the medical opinion evidence, the Third Circuit has clarified that an ALJ is not "precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chandler*, 667 F.3d at 362. Courts in this District have firmly held that the ALJ is charged with ultimately determining the claimant's RFC. *Thomas E. v. O'Malley*, No. 22-2514, 2024 WL 1526150, at *20 (D.N.J. Apr. 9, 2024) (citing 20 C.F.R. § 404.1527(e), 404.1546(c)). As such, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("Primarily, the ALJ is responsible for making a[n] [RFC] determination based on the medical evidence, and [s]he is not required to seek a separate expert medical opinion."). As the ALJ

considered all relevant evidence in the record and rendered findings that are supported by substantial evidence, the Court finds no reason to disturb the ALJ's RFC finding. This Court is, therefore, satisfied that the ALJ conducted a proper analysis of the supportability and consistency factors when the ALJ made her RFC finding.

## IV.   CONCLUSION

For the reasons outlined above, the Court affirms the Commissioner's final decision. The Court will issue an Order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE